**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| REINHARDT CARL FREDERICK HANOLD, IV, | } | |
| | } | |
| | } | |
| *Plaintiff*, | } | |
| v. | } | Civil Action No. H-03-734 |
| | } | |
| RAYTHEON COMPANY, RAYTHEON AIRCRAFT COMPANY, RAYTHEON TRAVEL AIR, RAYTHEON AIRCRAFT SERVICES, RAYTHEON AIRCRAFT CHARTER AND MANAGEMENT, and FLIGHT OPTIONS, LLC, | } } } } } } } | |
| | } | |
| *Defendants*. | } | |

## OPINION AND ORDER

Presently before the Court are Defendants' Raytheon Company (Raytheon),

Raytheon Aircraft Company (RAC), Raytheon Travel Air (RTA), Raytheon Aircraft Services

(RAS), Raytheon Aircraft Charter and Management (RACM), and Flight Options, LLC's (Flight

Options) (collectively, Defendants) motion to dismiss for failure to state a claim (Doc. 26);

Defendants' joint motion for summary judgment (Doc. 63); Defendants' motions to strike (Docs.

68 & 84); Plaintiff Reinhardt Carl Frederick Hanold, IV's (Hanold) motions to strike (Docs. 75

& 76); and Plaintiff's motion for summary judgment (Doc. 77). Upon review and consideration

of these motions, the responses, replies, and surreplies thereto, the entire record, and the relevant

legal authority, the Court finds that summary judgment should be granted in Defendants' favor.

I.        Background and Relevant Facts

         A.        Procedural Background

         Plaintiff Hanold originally filed the above styled and numbered cause in Texas

state court, and Defendants subsequently removed it to this Court on February 27, 2003. (Doc.

1). On August 9, 2005, the parties filed a joint motion to stay because of the sufficient similarity between the claims and defenses raised in this cause and those raised by the parties in *Eric L. Miller v. Raytheon Aircraft Company, Raytheon Travel Air, and Flight Options, L.L.C.* (Cause No. 02CV0990) in the 10th Judicial District Court of Galveston County, Texas (the *Miller* Case). (Doc. 44). In support of their motion, the parties represented that the determination of the legal issues in the *Miller* Case by the state appellate court would likely impact many of the same claims and defenses raised in the instant cause. (*Id.*). As such, on August 10, 2005, the Court issued an order granting the joint motion to stay, administratively closing the case, and instructing the parties to file a motion to reinstate after the appellate process in the *Miller* Case had concluded. (Doc. 46). On May 12, 2008, the Court reinstated this case to its active docket, and on August 4, 2008, Plaintiff Hanold filed his amended complaint. (Docs. 55 & 61). Plaintiff's amended complaint asserts claims for promissory estoppel, common law fraud, common law fraud-failure to disclose, negligent misrepresentation, wrongful discharge, civil conspiracy, intentional infliction of severe emotional distress, and negligence. (Doc. 61).

B.      Relevant Facts

Defendant RTA, created in June 1997, is a sister company of Defendant RAC and a wholly-owned subsidiary of Raytheon Aircraft Holdings, Inc., which in turn is a wholly-owned subsidiary of Defendant Raytheon. (Wallisch Aff., Doc. 63 Ex. D at ¶ 3). Defendants RAS and RACM are also sister companies to Defendant RTA, as well as wholly-owned subsidiaries of Raytheon Aircraft Holdings, Inc. (*Id.*). From June 1997 until March 20, 2002, Defendant RTA operated fractionally-owned aircraft and employed more than 500 pilots. (*Id.*).

On March 20, 2002, Defendant RTA combined certain of its assets and liabilities with certain assets and liabilities of its competitor, Flight Options, Inc. in order to form a

separate legal entity, Defendant Flight Options. (*Id.* at ¶ 4). As a result of this transaction, Defendant RTA did not cease to exist. (*Id.* at ¶ 5). It did, however, cease its operation of fractionally-owned aircraft. (*Id.*). As such, the services provided by the pilots who were employed by Defendant RTA were no longer necessary, and the employment of those pilots was officially terminated on April 1, 2002.  (*Id.*).  The pilots employed by Defendant RTA were under the operational control of Defendant Flight Options from March 20, 2002, until April 1, 2002. (*Id.*).

Defendant RTA hired Plaintiff Hanold in March 1999 to serve as a pilot in its fractionally-owned aircraft operation.  (*Id.* ¶ 6).  Plaintiff Hanold did not have an employment contract and, as such, served as an at-will employee of Defendant RTA.  (*Id.*).  Defendant Flight Options extended an offer of at-will employment to Plaintiff on February 7, 2002, to begin on the effective date of the merger.  (Doc. 63 Ex. K).  Plaintiff executed the offer letter on February 11, 2002.  (*Id.*).  Pursuant to the terms of his offer letter, Plaintiff attended an indoctrination session at Defendant Flight Options' Cleveland, Ohio facility during March 2002. (*Id.*).  Based on Defendant Flight Options' Chief Pilot Joseph Salata's (Salata) observations of and interactions with Plaintiff at the indoctrination session, Defendant Flight Options decided to terminate Plaintiff's employment.  (Salata Dep., Doc. 63 Ex. L at pp. 150-51).  Plaintiff's employment was terminated on April 1, 2002.  (Doc. 63 Ex. P).

In his latest pleading, Plaintiff Hanold claims that he was wrongfully discharged by his employer solely because he repeatedly refused to falsify maintenance discrepancy logs at the hypothetical and actual insistence of his superiors.[1]  Plaintiff alleges that the Defendants

---

[1] The Court notes that, in Plaintiff's earlier pleadings and throughout the course of discovery before this case was stayed in 2005, Plaintiff alleged that he was discharged because he refused to perform an illegal act. Specifically, he alleged that he was repeatedly asked to fly aircraft in violation of federal law and that, due to his refusal to fly, he was terminated.

specifically instructed him that he was not to make an entry into the maintenance discrepancy log before takeoff as required by law even if the entry was for an item that would not result in delay to flight operations.   (Pl.'s Am. Pet., Doc. 61 at ¶ 44).   Plaintiff further alleges that when Defendants understood that he would not conform to their "criminal practices," he was "threatened with termination, targeted for termination by the various Raytheon Subsidiaries and terminated by each of them in turn in a coordinated and a conspiratorial fashion."   (*Id.* at ¶ 46). Plaintiff maintains that he was put on a list targeted for termination which was then passed on to the operational managers at Defendant Flight Options who subsequently terminated Plaintiff's employment, effective April 1, 2002.   (*Id.*; Doc. 63 Ex. P).

The remainder of Plaintiff's allegations are, in large part, related to his allegation of wrongful discharge for failure to falsify maintenance discrepancy logs.   To the extent those allegations include additional facts, the Court cites to and discusses those in its analysis of each of the remaining claims.

II.        Legal Standard on Summary Judgment

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).   The substantive law governing the suit identifies the essential elements of the claims at issue and, therefore, indicates which facts are material.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material

fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party

fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any

response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

        Once the movant meets its burden, however, the nonmovant must direct the

court's attention to evidence in the record sufficient to establish that there is a genuine issue of

material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric*

*Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.,*

369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a

jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV*

*Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond

the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and

admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v.*

*Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not

competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d

377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102

F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert.*

*denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert.*

*denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex.*

*Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The non-movant

cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v.*

*Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871,

889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party.  *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

III.        <u>Discussion</u>

For the reasons set forth herein, the Court finds that Defendants are "air carriers" within the meaning of the Airline Deregulation Act of 1978 (the ADA) and that Plaintiff's claims are preempted by the ADA, as amended by the Whistleblower Protection Program of 2000 (WPP).  The Court further finds that Defendants remaining claims for promissory estoppel, common law fraud, common law fraud-failure to disclose, negligent misrepresentation, civil conspiracy, intentional infliction of emotional distress, and negligence are without merit.

Because the Court relies on, *inter alia*, the Affidavit of William Wallisch (Wallisch) (Doc. 63 Ex. D), the Air Carrier Certificate for RACM (Doc. 30 Ex. A), the Air Carrier Certificate for Flight Options (Doc. 34 Ex. A), the April 30, 2008, letter from the Federal Aviation Administration (FAA) (Doc. 76 Ex. B), and the October 30, 2008, letter from the FAA (Doc. 81 Ex. B), it will grant Defendants' motion pursuant to Fed R. Civ. P. 56 rather than Fed. R. Civ. P. 12(b)(6).

        A.      <u>Evidentiary Objections</u>

Plaintiff Hanold has objected to the Wallisch Affidavit (Doc. 63 Ex. D) and the Air Carrier Certificate for Flight Options (Doc. 34 Ex. A). (Docs. 75 & 76). For the reasons set forth below, the Court finds that both of Hanold's objections should be overruled.

Fed. R. Civ. P. 56(e) states, in pertinent part,

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed. R. Civ. P. 56(e). In the Fifth Circuit, it is well settled that "the admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (quoting *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995)).

Plaintiff objects to the Wallisch Affidavit because he claims that Wallisch perjured himself. Specifically, Plaintiff contends that he was not terminated "as a result of the cessation of Raytheon's fractional aircraft business in March of 2002 because Raytheon did not sell that business until November of 2007." (Doc. 75 at ¶ 6). In support thereof, Plaintiff has

provided a November 30, 2007, press release of Raytheon and the termination notice with which he was provided in April 2002.  (Doc. 75 Exs. 1 & 2).

Wallisch did not perjure himself in his affidavit, as Defendants explain.  The Wallisch Affidavit relates only to Defendant RTA and not to any of the other Defendants in this case.  To clarify, Defendants provided the Affidavit of Kathryn Gilchrist Simpson (Simpson), Vice President-Assistant General Counsel for Raytheon.  As Simpson explains, Defendant Flight Options was formed pursuant to a March 2002 Combination Agreement in which Defendant RTA, an indirect wholly-owned subsidiary of Defendant Raytheon, and Flight Options, Inc. contributed specific assets and liabilities to Defendant Flight Options.  (Simpson Aff., Doc. 82 Ex. A at ¶ 3).  As a result of the Combination Agreement, Defendant RTA maintained a minority ownership stake in Defendant Flight Options.  (*Id.*).  Through a series of transactions between 2003 and 2007, Defendant RTA's ownership interest in Defendant Flight Options increased, and, eventually, Defendant RTA became the 100% owner of Defendant Flight Options until that stake was divested through various transactions that occurred in late 2007.  (*Id.* at ¶ 4).  Although Defendant RTA had an ownership interest in Defendant Flight Options after the effective date of the Combination Agreement, these two defendants were, at all times, separate entities, and Defendant RTA never recommenced its fractional ownership business.  (*Id.* at ¶¶ 5-6).  The Court, therefore, concludes that Plaintiff's objection to the Wallisch Affidavit is overruled.

Plaintiff objects to the Air Carrier Certificate for Flight Options.  Specifically, Plaintiff argues that, ". . . it is clear that Air Carrier Certificate did not and could not have born the name Flight Options, LLC in February of 2001" and that " . . . Flight Option, LLC's name didn't appear on any Air Carrier Certificate including certificate number DJFA-206D until

November of 2003[.]"   (Doc. 76 at ¶ 10).   As a result, Plaintiff contends this evidence is irrelevant and should be stricken.

As Defendants point out in their response to Plaintiff's motion to strike the Air Carrier Certificate for Flight Options, a review of this evidence shows that, while it was reissued on November 10, 2003, its effective date is February 6, 2001, over a year before Plaintiff's employment with Defendant Flight Options began.   It was later reissued on November 10, 2003. The April 30, 2008, letter from the FAA to Hanold further supports Defendants' argument in response.   As the FAA states, ". . . air carrier certificate DJFA was identified in the Operation Specifications for use under the Code of Federal Regulations Part 135 as Options Flight Support, Inc. d/b/a Flight Options from 2/28/2001 to 11/18/2003, then from 11/18/2003 to present as Flight Options, LLC."   (Doc. 76 Ex. B).   As the FAA clarified for Plaintiff in its October 30, 2008, correspondence, "[p]rior to November 18, 200[3], DJFA206 was a certified air carrier; however, our review of the Operations Specification A001 does not list the name Flight Options LLC until the November 18, 2003 date."   (Doc. 81 Ex. B).   In view of this, the Court shall overrule Plaintiff's objection and allow the evidence as it is relevant to a main issue in this case.

Defendants have objected to various pieces of evidence in Plaintiff's summary judgment motion.   (Docs. 68 & 84).   However, even if all of this evidence were admissible under Fed. R. Civ. P. 56(e), it would not change the Court's holding in this case.   As such, the Court declines to address Defendants' objections.

B.      Plaintiff's Wrongful Termination Claim is Preempted by the ADA

1.      Defendant Flight Options is an "Air Carrier" under the ADA.

Plaintiff contends that Defendants are not "air carriers" within the meaning of the ADA.   However, as Defendants maintain and the evidence makes clear, Defendant Flight

Options, the defendant that terminated Plaintiff's employment, was an "air carrier" at all times relevant to this case.

The ADA defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation."  49 U.S.C. § 40102(a)(2).  "Air transportation" is defined as "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft."  *Id.* § 40102(a)(5).  "Interstate air transportation," the type of "air transportation" involved in the instant case, is the "transportation of passengers or property by aircraft as a common carrier for compensation[.]"  *Id.* § 40102(a)(25).  A "citizen of the United States" may be a "corporation or association organized under the laws of the United States or a State, the District of Columbia, or a territory or possession of the United States[.]"  *Id.* § 40102(a)(15)(C).

Defendants produced as evidence a certificate from the FAA certifying Defendant Flight Options' status as an "air carrier."  *See* 14 C.F.R. § 119.5(a) ("A person authorized by the Administrator to conduct operations as a direct air carrier will be issued an Air Carrier Certificate.").  Plaintiff Hanold has failed to raise a question of material fact with respect to this issue, and, as such, the Court finds, as a matter of law, that Defendant Flight Options is an "air carrier" as that term is defined under the ADA.  *See Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 372 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

2.     Preemption under the ADA

The Fifth Circuit has not yet considered the preemptive effect of the ADA on wrongful discharge claims by pilots.  Nevertheless, the plain language of the relevant statutory provisions and authority from courts outside of this circuit, as well as the opinion of the First

Court of Appeals in the *Miller* Case, make it clear that Hanold's wrongful termination claim is preempted by the ADA, as amended by the WPP.

By enacting the ADA, Congress intended to preempt aspects of state law that govern air carriers. *In re Am. Airlines, Inc., Privacy Litigation*, 370 F. Supp. 2d 552, 561 (N.D. Tex. 2005). Section 41713(b)(1) provides, in relevant part, "[e]xcept as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1) (footnote omitted).

The Supreme Court has given a broad interpretation to the "related to" language in this section and, in turn, to the preemptive effect of the ADA. *Am. Airlines*, 370 F. Supp. 2d at 561 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of [relating to] is a broad one . . . and the words thus express a broad pre-emptive purpose.")). As the Fifth Circuit has held, "[l]aws of general applicability may be preempted by the ADA; they need not actually prescribe airline prices, routes, or services." *Id.* (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)).

In Texas, absent a specific agreement to the contrary, an employer may fire an employee at will for good cause, bad cause, or no cause at all. *Miller*, 229 S.W.3d at 367 (citing *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). In *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985), the Texas Supreme Court recognized an exception to the employment-at-will doctrine for an employee discharged "for the sole reason that the employee refused to perform an illegal act." *Miller*, 229 S.W.3d at 367 (citing *Sabine Pilot*, 687 S.W.2d at 735; *Winters v. Houston Chronicle Publ'g Co.*, 795 S.W.2d 723, 724 (Tex. 1990)). The court held that a plaintiff has the burden to prove by a preponderance that his

discharge was for the sole reason that he refused to perform an illegal act that he reasonably believed would subject him to criminal penalties. *Id.* (citing *Sabine Pilot*, 687 S.W.2d at 735; *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000); *Winters*, 795 S.W.2d at 724).  The *Sabine Pilot* exception applies when an employee has been unacceptably forced to choose between risking criminal liability or having his employment terminated.  *Id.* (citing *Winters*, 795 S.W.2d at 724).  An employer who discharges an employee for refusing to perform an illegal act <u>and</u> for a legitimate reason cannot be held liable for wrongful discharge; the refusal must be the <u>sole</u> cause of the employee's termination.  *Id.* (emphasis added) (citing *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995); *McClellan v. Ritz-Carlton Hotel Co.*, 961 S.W.2d 463, 464 (Tex. App.—Houston [1st Dist.] 1997, no pet.)).

Defendants argue that, just as the First Court of Appeals dismissed the plaintiff's *Sabine Pilot* claim in *Miller*, the Court should dismiss Hanold's analogous claim in the instant case.  Miller alleged that he refused to pilot aircraft and was fired for it and, as a result, the *Sabine Pilot* claim subjects his employer to state law liability for firing a pilot for his refusal to fly.  *Miller*, 229 S.W.3d at 375.  The *Miller* court found, however, that the ADA preempted Miller's claim because "the claim relates to the transportation services FOC [Defendant Flight Options] provides, and if allowed, would amount to the enactment or enforcement of a state law."  *Id.* at 374.  The Court finds the analysis and reasoning in the *Miller* case persuasive and instructive.  As such, it will apply it to the facts of this case which involves similar parties, claims, and defenses, as the parties themselves admitted in their joint motion to stay in 2005.

The *Miller* court adopted the Texas Supreme Court's two-part analysis from *Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 281-82 (Tex. 1996), to determine whether the ADA preempted the plaintiff's *Sabine Pilot* claim.  *Miller*, 229 S.W.3d at 372.  First, the

court asked whether the plaintiff's *Sabine Pilot* wrongful discharge claim is related to the defendant's prices, routes, or services.  *Id.* (citing *Kiefer*, 920 S.W.2d at 281).  It was undisputed that Miller refused to pilot aircraft, which resulted in the grounding of the aircraft.  *Id.*  The court found that grounding aircraft directly affected the defendant's point-to-point transportation services and, in support thereof stated, in pertinent part, "[w]hile some variation has arisen among the courts regarding the definition of the term "services" under the ADA, every court attempting to define the term has included point-to-point transportation within its definition as a bargained-for aspect of air travel."  *Id.* at 372-73 (citing *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003) (adopting Fifth Circuit definition of services, which includes transportation itself); *Botz v. Omni Air Int'l*, 286 F.3d 488, 495 (8th Cir. 2002) (holding flight attendant's refusal to violate federal law by exceeding work hour maximum affected air carrier's services because aircraft could not fly without her); *Duncan v. NW. Airlines, Inc.*, 208 F.3d 1112, 1114-15 (9th Cir. 2000) (holding that service refers to provision of air transportation to and from various markets at various times), *cert. denied,* 531 U.S. 1058 (2000) (O'Connor, J., dissenting) (noting various definitions of term "services" under ADA and need to resolve this conflict between circuit courts); *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998) (defining services to include point-to-point transportation of passengers, cargo, or mail); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996) (defining services to include transportation itself); *Hodges*, 44 F.3d at 336 (defining services to include transportation itself); *Delta Airlines, Inc. v. Black*, 116 S.W.3d 745, 752 (Tex. 2003) (citing service definitions from *Hodges* and *Charas*)).  Given the United States Supreme Court's broad interpretation of the phrase "related to," the *Miller* court found that the plaintiff's *Sabine*

- 13 -

*Pilot* claim related to the defendant's point-to-point transportation services.  *Id.* at 373 (citing 49

U.S.C. § 41713(b)(1); *Morales*, 504 U.S. at 384).

The second inquiry under *Kiefer* is whether the plaintiff's *Sabine Pilot* wrongful

discharge claim constitutes the enforcement of a state law, regulation, or other provision within

the meaning of the ADA's preemption clause.  *Id.* (citing *Kiefer*, 920 S.W.2d at 281).  A *Sabine*

*Pilot* wrongful discharge claim embodies state public policy; it represents a policy determination

that an employee terminated for refusing to perform a criminal act should have a tort action

against his employer.  *Id.* (citing *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995);

*Kiefer*, 920 S.W.2d at 282; *Sabine Pilot*, 687 S.W.2d 733, 735).  The *Miller* court found that,

pursuant to *Sabine Pilot*, the plaintiff would be able to seek money damages in state court when

he chose to ground aircraft and suffered termination of his employment as a result and that,

therefore, imposes state policies on the point-to-point transportation services of the defendant.

*Id.* (citing *Black*, 116 S.W.3d at 757).  Plaintiff's claim related to the transportation services

provided by the defendant, an "airline carrier" under the ADA.  *Id.* at 373-74.  As such, the court

held that the ADA preempted plaintiff's *Sabine Pilot* claim because if it were allowed, it would

amount to the enactment or enforcement of a state law.  *Id.* (footnote omitted).

Plaintiff's amended petition claims that he was fired for the sole reason that he

repeatedly refused to falsify maintenance discrepancy logs at the hypothetical and actual

insistence of his superiors.  Defendant argues and this Court is skeptical that Plaintiff may have

removed his earlier allegation that he was terminated because he grounded the aircraft to avoid a

holding similar to *Miller* on the issue of ADA preemption.  The Court points out that Plaintiff's

amended petition clearly contradicts his sworn deposition testimony, where he states that his

allegations are not limited to falsifying maintenance logs and were more focused on the fact that

his supervisors wanted to "Keep Them Flying" and not to "ground the aircraft and make it unavailable to them."  (Pl.'s Dep., Doc. 83 Ex. A at p. 59-62).  Additionally, Plaintiff answered "[y]es, sir" in response to the question, "[a]nd they were out to identify you for termination because you refused to fly planes in violation of the Federal Aviation Regulations?"  (Pl.'s Dep., Doc. 83 Ex. B at p. 127).

The discrepancies between Plaintiff's amended petition, filed after the *Miller* opinion was issued, and the Plaintiff's deposition testimony cited above, as well as Plaintiff's admission that the delays resulting from making entries into the maintenance records affected air services, lead the Court to conclude that Plaintiff's *Sabine Pilot* claim is preempted by the ADA, as amended by the WPP.  The Court cites to the following excerpt from Plaintiff's deposition to illustrate its second supporting rationale:

> You were not to write them up until you got to a maintenance base that they – and they had the parts there waiting for you . . . It's not just because they're trying to avoid the grounding of aircraft.  They don't want any delays, because if they have – the way it was explained to me is if an owner is delayed five times, he can – he has a clause in his contract to pay him, well, he can say I want my money back or something like that, and so they don't want – well, the problem is you don't want to make the owners mad, but they a – they had a contractual reason, too.

(Pl.'s Dep., Doc. 83 Ex. A at 195).  As Plaintiff himself admitted, issues with respect to entries in the maintenance logs does, in fact, delay the aircraft.  As such, the Court finds that Plaintiff's *Sabine Pilot* claim relates to the transportation services that Defendant Flight Options provides, and if allowed, would amount to the enactment or enforcement of a state law.  *See Miller*, 229 S.W.3d at 374 (footnote omitted).

The Court points out that the ADA was amended to include the WPP, which added a provision creating a federal whistleblower cause of action for employees discharged or

discriminated against for reporting an employer's violations of federal law.  *Id.* at 374 n. 6 (citing 49 U.S.C. § 42121).  As such, Hanold had an available remedy if Defendant Flight Options had terminated him for reporting a violation of federal law.  The Court's conclusion that the ADA preempts Hanold's *Sabine Pilot* wrongful discharge claim strengthens the conclusion.  *See id.* (citations omitted).

C.       Plaintiff's Remaining Claims are Without Merit

The Court finds that Plaintiff's remaining claims for promissory estoppel, common law fraud, common law fraud-failure to disclose, negligent misrepresentation, negligence, civil conspiracy, and intentional infliction of emotional distress must fail, as well.

1.       Promissory Estoppel

The elements of a promissory estoppel claim are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to her detriment. *Vlasek v. Wal-Mart Stores, Inc.*, Civil Action No. H-07-0386, 2008 WL 2937760, * 10 (S.D. Tex. July 22, 2008) (citing *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983)).  The claimed reliance must be both reasonable and justified.  *Moody Nat'l Bank of Galveston v. GE Life & Annuity Assur. Co.*, 270 F. Supp. 2d 875, 880 (S.D. Tex. 2003) (citing *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 558 (Tex. App.—San Antonio 1998, no pet.)).

Plaintiff contends that his promissory estoppel claim "has nothing to do with termination or promise of future employment but with the unlawful nature of the employment and the intentionally abusive and distressing working conditions."  (Pl.'s Am. Pet., Doc. 61 at ¶ 35).  Specifically, he claims that he discovered, after accepting offers of employment, that he was asked to participate, not in a legal operation that had been described in company literature, but in an ongoing criminal enterprise.  (*Id.* at ¶ 33).  In response to these allegations, Defendants

argue that an element of any promissory estoppel claim is detrimental reliance, and detrimental reliance must be reasonable and justified.  Defendants maintain that Plaintiff has failed to establish this element.

Because Hanold argues that his promissory estoppel claim has no relationship to his termination or employment, the Court need not address the element of detrimental reliance with respect to Plaintiff's at-will employment.[2]  Instead, the Court will dismiss this claim because the Plaintiff has failed to provide evidence that raises a question of material fact with respect to this issue. Hanold's blanket, conclusory, and unsubstantiated allegations and arguments will not suffice.

### 2.      Common Law Fraud & Common Law Fraud-Failure to Disclose

To recover for fraud, a plaintiff must prove the following elements: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury."  *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001); citing *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977)).  These elements are also applicable to claims of fraudulent inducement.  *Lane*, 529 F.3d at 564 (citing *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex.

---

[2] "A promise to provide employment-at-will does not provide a basis for detrimental reliance on continued employment." *Id.* at * 10 (citing *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 608 (Tex. 2002); *Collins v. Allied Pharmacy Mgmt.*, 871 S.W.2d 929, 937 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Hinds v. Orix Capital Markets, L.L.C.*, No. Civ. A. 302CV0239-P, 2003 WL 22132791, * 6-7 (N.D. Tex. Sept. 11, 2003); *Raggio v. Parkland Mem'l Hosp.*, No. 3-95-CV-0680- R, 1997 WL 135662, * 9 (N.D. Tex. Mar. 12, 1997).

2001); *RenCare, Ltd. v. United Med. Res., Inc.*, 180 S.W.3d 160, 166 (Tex. App.—San Antonio 2005)).

Although Plaintiff lists separate counts for his common law fraud and common law fraud-failure to disclose claims, the Court will address them together as they address similar issues.  Plaintiff alleges that Defendants materially misrepresented that they were running a legal and legitimate enterprise, which misrepresentation they knew to be false.  (Pl.'s Am. Pet., Doc. 61 at ¶ 36).  Moreover, Plaintiff alleges that Defendants materially misrepresented that "all RAC pilots in good standing that were assigned to RTA would be reassigned in turn to FLOPS [Defendant Flight Options] upon completion of the merger" and that "these pilots in good standing would be assured of their current flying positions and seniority within FLOPS."  (*Id.* at ¶¶ 36-37).  Additionally, Plaintiff contends that "RAC and RTA and FLOPS failed to disclose the evaluation criteria for pilots in good standing and that good standing meant willingness to falsify maintenance discrepancy logs."  (*Id.* at ¶¶ 37, 39).  These allegations clearly contradict Plaintiff's statement that these the two fraud causes of action have nothing to do with termination or promise of future employment.

The Court has reviewed these allegations and concludes that Defendants' assessment of these two causes of action is correct: Plaintiff is alleging a fraudulent inducement claim.  Plaintiff has essentially argued that he was fraudulently induced into accepting employment with Defendant Flight Options due to the various promises made to him and, as a result, turned down other employment opportunities.  At the time he made his decision, he claims he was unaware of the evaluation criteria for pilots, which he alleges is dependent upon the pilot's willingness to falsify maintenance logs, and that, as a result, when he failed to "comply" with this "evaluation criteria" he was terminated, thereby suffering damages.

Because of his status as an at-will employee, Plaintiff Hanold's cause of action for fraudulent inducement must fail. "An 'at will' employee is barred from bringing a cause of action for fraud against his employer based upon the employer's decision to discharge the employee." *Miller*, 229 S.W.3d at 381 (quoting *Leach v. Conoco, Inc.*, 892 S.W.2d 954, 961 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.); citing *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 379-80 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding status as at-will employee precludes claim for fraudulent inducement as a matter of law). The *Miller* court found that the plaintiff's fraud claims based on the statements that Flight Options would hire all RTA pilots were precluded as a matter of law because the plaintiff's employment was at will. In view of this, as well as the controlling legal authority cited to above, the Court finds that Hanold's fraud claims, which the Court has construed as fraudulent inducement claims, must fail as a matter of law.

### 3.     Negligent Misrepresentation & Negligence

To recover for negligent misrepresentation, a plaintiff must prove the following: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Miller*, 229 S.W.3d at 379 (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n. 24 (Tex. 2002); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999); *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).   Furthermore, the plaintiff must also prove that the defendant misrepresented an existing fact, not a promise of future conduct.  *Id.* at 379-80 (citing *Sloane,*

825 S.W.2d at 442; *Dallas Firefighters Ass'n v. Booth Research Group, Inc.*, 156 S.W.3d 188, 194 (Tex. App.—Dallas 2005, pet. denied); *Swank v. Sverdlin*, 121 S.W.3d 785, 802 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)).

In his earlier pleading, Hanold's negligent misrepresentation claim rested upon his allegation that the RTA pilots would be offered opportunities to continue flying for Flight Options and that the pilot positions would be retained and the pilots would be assured of their current flying positions and seniority. (Doc. 1). However, after the 1st Court of Appeals issued its ruling in *Miller*, Plaintiff amended his pleading and did not include these statements as bases for his claim. Defendant argues that because the 1st Court of Appeals dismissed Miller's negligent misrepresentation claims on the grounds that the statements alleged were promises of future conduct rather than statements of existing fact, Plaintiff has amended his complaint to avoid the constraints of that decision. *See Miller*, 229 S.W.3d at 379-80. Specifically, Plaintiff has stated that his negligent misrepresentation claim is "unrelated to promises of future employment or wrongful termination." (Pl.'s Am. Pet., Doc. 61 at ¶ 43). Regardless of whether Defendants are correct in their assertion, the Court has reviewed Plaintiff's negligent misrepresentation claim and shall dismiss it on other grounds.

According to Plaintiff, Defendants "represented that they were lawful business enterprises and that the rules they asked in writing that the Plaintiff follow were in fact the same rules they expected the Plaintiff to follow if he was to remain in good standing." (*Id.* at ¶ 42). Moreover, Plaintiff contends that "this misrepresentation supplied false information for the guidance of the Plaintiff in his conduct as an employee." (*Id.* at ¶ 43). These conclusory and unsubstantiated allegations in Plaintiff's amended petition and in his subsequent briefing on the

competing summary judgment motions are not enough to create a question of material fact on this claim.  As such, this claim must be dismissed.

The Court will address Plaintiff's negligence claim in this section.  Although Plaintiff entitles it a negligence cause of action, the Court will construe it as one for negligent misrepresentation.  Plaintiff alleges that, "both Raytheon and FLOPS represented that reports by employees would be handled as confidentially as possible and that no employee would suffer retaliation by the company because of a report made in good faith."  (Pl.'s Am. Pet., Doc. 61 at ¶ 62).  For the reasons the Court stated above in dismissing Plaintiff's negligent misrepresentation claim, the Court also finds that Plaintiff's "negligence" claim must be dismissed.  Furthermore, the Court reasons that this claim is based on an alleged promise of future conduct, not on statements of existing fact. As such, it may not serve as the basis of a negligent misrepresentation claim.  *See Miller*, 229 S.W.3d at 379-80.

Accordingly, the Court shall grant summary judgment on Plaintiff's negligent misrepresentation claim, as well as his negligence claim, which the Court has construed as a negligent misrepresentation claim.

4.    Civil Conspiracy

Civil conspiracy is a derivative tort under Texas law.  *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)).  "If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails."  *Id.* at 640 (citing *Tilton*, 925 S.W.2d at 681).  Because Plaintiff in the instant case cannot prevail on his underlying tort claims, his claim for civil conspiracy inevitably fails.

5.     <u>Intentional Infliction of Emotional Distress</u>

In *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998), the Texas Supreme Court recognized intentional infliction of emotional distress as a "gap-filler" tort that was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (citing *Standard Fruit*, 985 S.W.2d at 68). "Intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). "Where the gravaman of the complaint is really another tort, intentional infliction of emotional distress is unavailable." *Louis v. Mobil Chem. Co.*, 254 S.W.3d 602, 610 (Tex. App.—Beaumont 2008, pet. denied) (citing *Creditwatch*, 157 S.W.3d at 816; *Zeltwanger*, 144 S.W.3d at 441). This rule applies regardless of whether the plaintiff succeeds, or even makes, an alternative claim. *Zeltwanger*, 157 S.W.3d at 448.

Although Plaintiff states that his emotional distress claim is completely unrelated to his termination of employment and that it arose prior to his termination, the Court agrees with Defendants' contention that, "it is clear that the gravaman of his complaint . . . is that his supervisors demanded that he illegally falsify records and then retaliated against him as a result of his refusal to oblige, and that those threats included termination and an ability to find work after he was terminated." (Doc. 63 at ¶ 75). As the Beaumont Court of Appeals found in *Louis*, "[t]he nature of the complained-of conduct . . . is the threat to wrongfully discharge Louis unless he falsified his reports. That conduct would give rise to a *Sabine Pilot* claim but for Louis's participation in the allegedly illegal conduct." *Louis*, 254 S.W.3d at 610. The *Louis* court then

cited to *Creditwatch* and *Zeltwanger* stating, "[w]here the gravaman of the complaint is really another tort, intentional infliction of emotional distress is unavailable" and holding that the trial court did not err in granting summary judgment on that claim.  *Id.*

Accordingly, the Court finds that Hanold may not assert an intentional infliction of emotional distress claim as it is based on the same underlying conduct as the wrongful termination, or *Sabine Pilot*, claim that he asserts.  The Court must, therefore, grant summary judgment in Defendants' favor on Hanold's intentional infliction of emotional distress claim.

IV.        Conclusion

Accordingly, the Court hereby

ORDERS that Defendants' motion for summary judgment (Doc. 63) is GRANTED and that Plaintiff's motion for summary judgment (Doc. 77) is DENIED.  The Court further

ORDERS that Plaintiff's motions to strike (Docs. 75 & 76) and Defendants' motions to strike (Docs. 68 & 84) are DENIED.  The Court further

ORDERS that Defendants' motion to dismiss (Doc. 26) is DENIED as moot.

SIGNED at Houston, Texas, this 30th day of September, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE